IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
MACON DIVISION

| | | |
|---|---|---|
| CALVIN L MOORE, | : | |
| | : | |
| Petitioner, | : | |
| | : | |
| v. | : | No. 5:15-cv-00379-MTT-CHW |
| | : | |
| GREGORY MCLAUGHLIN, | : | Proceedings Under 28 U.S.C. § 2254 |
| | : | Before the U.S. Magistrate Judge |
| Respondent. | : | |
| | : | |

**REPORT AND RECOMMENDATION**

On September 29, 2015, Petitioner, Calvin Moore, filed a federal habeas action pursuant to 28 U.S.C. § 2254. Respondent filed an Answer on December 21, 2015, arguing that Petitioner's claims were procedurally defaulted at the state habeas level and barred from review by this Court. Because Petitioner's ineffective assistance of counsel claim alleging that trial counsel failed to file a motion to suppress his arrest warrant is procedurally barred, it is **RECOMMENDED** that this claim be **DISMISSED**. Petitioner's remaining ineffective assistance of counsel claims allege that trial counsel (1) failed to adequately cross-examine the state's fingerprint expert and (2) failed to suppress the expert's testimony. These claims were decided on the merits by the Georgia Supreme Court, and that court's decision was not contrary to clearly established federal law or based on unreasonable factual determinations. It is therefore **RECOMMENDED** that these claims be **DENIED**.

I. Procedural History

On July 15, 2004, the Grand Jury of Tift County, Georgia, returned a true bill of indictment charging Petitioner with Murder, Felony Murder, and Aggravated Assault. Doc. 10-4, p. 57-59. Petitioner entered a plea of not guilty on August 3, 2004, and proceeded to a trial by

1

jury. Doc. 10-4, p. 59. On March 7, 2006, approximately one hour and thirty minutes after deliberations began, the jury returned with a verdict finding Petitioner guilty of all three counts. Doc. 10-13, p. 129. Petitioner was sentenced to life in prison. Doc. 10-13, p. 134. On March 13, 2006, Petitioner filed a Motion for New Trial, Doc. 10-6, p. 33, and hearings were held on March 25, 2010, Doc 10-20, p. 5, April 29, 2010, Doc 10-20, p. 81, and August 13, 2010. Doc. 10-20, p. 141. The Motion was summarily denied on October 5th, 2010. Doc. 10-7, p. 56. Petitioner timely appealed the adverse decision.

On direct appeal, Petitioner presented twelve enumerations of error, including arguments that the trial court committed error by excluding exculpatory evidence, by admitting "illegally obtained" evidence, by allowing the State's fingerprint expert to testify, by deliberately interrupting Petitioner's direct examinations, by failing to hold a hearing concerning the admissibility of similar transactions, and by generally abusing its discretion. Doc. 10-22, pp. 7 – 49. Petitioner also alleged multiple counts of ineffective assistance of counsel related to trial counsel's failure to file motions related to fingerprint and "illegally obtained" evidence. *Id.* The Georgia Supreme Court addressed only Petitioner's claim related to similar transactions and stated:

> Our review of the record confirms Appellant's claim that the trial court did not hold the similar transaction hearing that Rule 31.3 required and Appellant requested. We reject the State's contention that the in-chambers discussion on February 20 was a proper Rule 31.3 hearing. That discussion was off the record, without the defendant present, and not open to the public. That is not a "hearing" within the meaning of Rule 31.3(B) and our case law.
>
> In addition, the trial court did not make all three on-the-record findings necessary to admit similar transaction evidence. Even if we construe the court's February 23 order as a finding that the State offered the similar transaction evidence for an appropriate purpose—namely, bent of mind and identity—the court made no explicit finding that there was sufficient evidence to establish that Appellant committed the independent offense or that there was sufficient similarity between the independent offense and the crime charged so that proof of the former tends to

> prove the latter. Moreover, in light of the circumstantial nature of the State's case against Appellant and the power of the similar transaction evidence that was admitted, we are unable to say that the trial court's errors were harmless.

*Moore v. State*, 290 Ga. 805, 809 -10 (2012) (internal citations omitted) (hereinafter Moore I). The case was vacated and remanded back to the trial court for the purpose of conducting "a proper Rule 31.3 hearing." *Id*. The Georgia Supreme Court did not address Petitioner's other enumerations of error. *Id*. The trial court conducted the hearing on August 1, 2012, and found the similar transaction evidence admissible. Doc. 10-23, p. 26; *Moore v. State*, 293 Ga. 676, 676 (2013) (hereinafter Moore II).

Petitioner then renewed his appeal to the Georgia Supreme Court, which addressed each of Petitioner's remaining eleven enumerations of error as well as new claims concerning errors during the remanded Rule 31 hearing. *Moore II,* 293 Ga. at 676. On September 9th, 2013, the Supreme Court of Georgia affirmed Petitioner's conviction and denied all grounds for relief. *Id*. Petitioner's motion for reconsideration was denied on October 7, 2013.

Petitioner filed a state habeas action on April 10, 2014. Doc. 10-1. Petitioner raised a single enumeration of error, alleging that defense counsel was ineffective for failing to file a Motion to Suppress Petitioner's arrest warrant. Doc. 10-1. Specifically, Petitioner asserted that the evidence used to establish probable cause for his arrest warrant included fingerprints and an eyewitness identification, but the eyewitness did not identify Petitioner and the fingerprint were not suitable for comparison. Doc. 10-1, p. 7.  The State Habeas Court determined that (1) the issue was procedurally defaulted because Petitioner did not raise it on his direct appeal, (2) the claim was already addressed on Petitioner's direct appeal, and (3) the claim was without merit. Doc. 10-25, p. 3-4. Petitioner's application for certificate of probable cause to appeal was denied on August 8, 2015. Petitioner then timely filed the present action.

## FACTS[1]

The Supreme Court of Georgia made the following factual findings on Petitioner's direct appeal:

> Appellant moved in with the victim in June or July of 2003. On occasion, Appellant was seen slapping or hitting the victim. On the evening of June 10, 2004, the victim's cousin, Angela Horton, visited him at his house. Horton observed that the victim had a busted lip, his knees were skinned, he had blood on his boxer shorts, and he could barely talk. Appellant was home at the time and told Horton that he was tired of the victim stealing his money and smoking his dope and he was going to beat the victim to death and leave his body on the railroad track so that it could not be identified after a train ran over it. Not thinking that Appellant was serious, Horton left and went to work.
>
> That night, Robert Cook, who was then homeless, was camping on an abandoned street by a railroad track. Sometime after 3:00 a.m., Cook saw a large man carrying a body on his shoulders emerge from the bushes. The man put the body down on the ground by a fence before walking over to Cook and asking him what he was doing there. The man then snatched Cook's backpack out of his hand, pulled Cook to the ground, and held Cook down with his hands around Cook's neck. The man let Cook go after Cook said that he "wouldn't say nothing" about what he had seen; when the man looked the other way, Cook ran to a nearby convenience store, where he called 911 at 3:54 a.m.
>
> Cook led the responding officers back to his encampment and gave the officers a physical description of the man who had attacked him. The officers searched the area and found the victim's body lying on the railroad track. Identification found with the victim led the officers to his house, where they found Appellant standing in the yard. Appellant matched the physical description Cook had provided, but Appellant denied having ever been to the area where the victim's body was found. One neighbor had seen Appellant on a street corner at about 3:00 a.m., and another saw his car driving up the street at about 3:15 a.m. The police later found Appellant's latent thumb print on a metal fence rail near Cook's campsite and about 150 yards from where the victim's body was found. The medical examiner determined that the victim died from crushing chest injuries associated with manual strangulation.
>
> Over Appellant's objection, the State presented evidence at trial regarding Appellant's involvement in the 1995 death of Robert Littrell, a man made frail by multiple sclerosis. Appellant had lived with Littrell as his caretaker for about five years, and they had financial and physical disputes. On November 2, 1995, Appellant called 911 to report that Littrell was not breathing. The chief medical

---

[1] "Under AEDPA, we accord a presumption of correctness to a state court's factual findings." *Mason v. Allen*, 605 F.3d 1114, 1118 (11th Cir. 2010) (citing Section 2254(e)(1))

examiner testified that Littrell had suffered crushing chest injuries and a throat injury consistent with manual strangulation, and a regional medical examiner testified that Littrell's injuries were similar to the injuries suffered by the victim in this case. Appellant claimed that he inflicted Littrell's injuries in an unsuccessful attempt to resuscitate him through CPR. Although Appellant was not charged at the time, he was apparently indicted for the murder of Littrell after the charges were filed in this case.

*Moore I*, 290 Ga. at 805 – 06.

## NEED FOR AN EVIDENTIARY HEARING

Under the Anti-Terrorism and Effective Death Penalty Act ("AEDPA"), 28 U.S.C. § 2244, factual determinations made by a state court are presumed to be correct but can be rebutted by clear and convincing evidence. 28 U.S.C. § 2254(e)(1). On the other hand, if an applicant has failed to develop the factual basis of a claim in state court proceedings, the court shall not hold an evidentiary hearing on the claim unless the applicant shows that: (A) the claim relies on: (i) a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable; or (ii) a factual predicate that could not have been previously discovered through the exercise of due diligence; and (B) the facts underlying the claim would be sufficient to establish by clear and convincing evidence that but for a constitutional error, no reasonable fact finder would have found the applicant guilty of the underlying offense. 28 U.S.C. § 2254(e)(2). After a careful review of the record, and in light of the discussion below, no evidentiary hearing is warranted in this case.

## LEGAL STANDARDS

In accordance with the provisions of AEDPA, federal courts are prohibited from granting habeas relief with respect to any claim adjudicated on the merits in state court unless that decision either: (1) resulted in a decision contrary to, or involved an unreasonable application of, clearly established federal law as determined by the Supreme Court, or (2) resulted in a decision

based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings. 28 U.S.C. § 2254(d); W*ellons v. Warden, Ga. Diagnostic and Classification Prison*, 695 F.3d 1202, 1206 (11th Cir. 2012). Not only is this standard "difficult to meet," *Harrington v. Richter*, 131 S.Ct. 770, 786 (2011), but it also is a "highly deferential standard for evaluating state-court rulings . . . which demands that state-court decisions be given the benefit of the doubt." *Woodford v. Visciotti*, 537 U.S. 19, 24 (2002).

A state court's decision is "contrary to" clearly established federal law if either "(1) the state court applied a rule that contradicts the governing law set forth by Supreme Court case law, or (2) when faced with materially indistinguishable facts, the state court arrived at a result different from that reached in a Supreme Court case." *Putman v. Head*, 268 F.3d 1223, 1241 (11th Cir. 2001). An "unreasonable application" of clearly established federal law may occur if the state court "identifies the correct legal rule from Supreme Court case law but unreasonably applies that rule to the facts of the petitioner's case." *Id*. "An unreasonable application may also occur if a state court unreasonably extends, or unreasonably declines to extend, a legal principle from Supreme Court case law to a new context." *Id*.

When a "state court's application of federal law is challenged, it must be shown to be not only erroneous, but objectively unreasonable." *Yarborough v. Gentry*, 540 U.S. 1, 5 (2003). Similarly, when reviewing a state court's decision applying federal law, a federal court must not determine the accuracy of the result, but instead, whether the result was objectively unreasonable, which is "a substantially higher threshold." *Schriro v. Landrigan*, 550 U.S. 465, 473 (2007). A state court's factual determinations are presumed correct unless rebutted by clear and convincing evidence. 28 U.S.C. § 2254(e)(1).

DISCUSSION

Respondent has interpreted Petitioner's pleadings to raise a single ground of relief alleging that he received ineffective assistance of trial counsel related to failure to suppress Petitioner's arrest warrant.[2] Respondent argues that this claim was not raised in Petitioner's direct appeal, and "urges the Court to defer to the state habeas corpus court's determination that this ground is procedurally defaulted and decline to review the merits." Doc. 9-1, p. 7. Within the body of his claim, however, Petitioner clearly and straightforwardly alleges multiple other claims of ineffective assistance of counsel based primarily on trial counsel's treatment of the State's fingerprint expert. Petitioner additionally claims that trial counsel was ineffective for failing to (1) cross-examine the state fingerprint expert concerning prior inconsistent statements and (2) object to the latent fingerprint evidence in light of the expert's prior statements. These claims were addressed on Petitioner's direct appeal and will be reviewed on the merits. Petitioner's claim concerning trial counsel's failure to contest the arrest warrant was not presented on direct appeal and is procedurally barred.

    *i.    Procedural Default*

Pursuant to 28 U.S.C. 2254, a writ of habeas corpus shall not be granted for an individual in custody pursuant to a state court judgment unless "the applicant has exhausted the remedies available in the courts of the state." A state court remedy is only exhausted if the claim has been fairly presented to the state courts. *McNair v. Campbell*, 416 F.3d 1291, 1302 (11th Cir. 2005) (citing *Picard v. Connor*, 404 U.S. 270, 275 (1971)). Therefore,"[a] state habeas corpus petitioner who fails to raise his federal claims properly in state court is procedurally barred from pursuing the same claim in federal court absent a showing of cause for and actual prejudice from

---

[2] Petitioner was arrested on June 15, 2014. Doc. 10-4, pp. 54 – 55.

the default." *Bailey v. Nagle*, 172 F.3d 1299, 1302 (11th Cir. 1999) (citing *Wainwright v. Sykes*, 433 U.S. 72, 87 (1977).

As the Eleventh Circuit explains, procedural default can arise in two situations. "First, where the state court correctly applies a procedural default principle of state law to arrive at the conclusion that the petitioner's federal claims are barred," a federal court is required to respect that decision. *Id*. "Second, if the petitioner simply never raised a claim in state court, and it is obvious that the unexhausted claim would now be procedurally barred due to a state-law procedural default, the federal court may foreclose the petitioner's filing in state court; the exhaustion requirement and procedural default principles combine to mandate dismissal." *Id*.

At issue in the present case is the first situation. The state habeas court determined that Petitioner's claim was defaulted pursuant to Georgia law. Specifically, the state habeas court found that Petitioner had not previously raised his ineffective assistance of counsel claim related to the suppression of the arrest warrant, Doc. 10-25, p. 3, and Georgia law provides that "[a] habeas petition who fails to raise an issue that he could have raised on direct appeal defaults the issue on habeas corpus, unless he can meet the cause and prejudice test." *Turpin v. Mobley*, 269 Ga. 635, 636 (1998).

Where a "state court correctly applies a procedural default principle of state law to arrive at the conclusion that the Petitioner's federal claims are barred" from review in state court, federal courts are required to respect the state court's decision. *Bailey,* 172 F.3d at 1302 (11th (citing *Atkins,* 965 F.2d at 956). However, a federal court is not required to honor a state procedural ruling unless the ruling rests on an independent and adequate state ground. *Alderman v. Zant*, 22 F.3d 1541, 1549 (11th Cir. 1994) (citing *Harris v. Reed*, 489 U.S. 255, 262 (1989). State grounds are independent and adequate if (1) the last court rendering judgment clearly stated

it was relying on procedural rules to resolve federal claims, (2) the decision rests entirely on state law grounds and not be intertwined with federal law, and (3) the state procedural rule is adequate. *Brown v. Sec. for Dept. of Corr.*, 200 F' App'x 885, 887 (11th Cir. 2006). If a state "incorrectly applies its own procedural default law," the state law ground is not adequate and does not preclude federal review. Brown, *200 F' App'x at 887*.

A careful review of Petitioner's pleadings on direct appeal, including his first appellate brief, his second appellate brief, and his replies to the State's Responses reveals that Petitioner did not present this claim on direct appeal. Petitioner presented multiple claims of ineffective assistance of counsel related to the suppression of evidence, but none argued that his arrest was constitutionally unreasonable based on allegations that the magistrate judge lacked probable cause to issue a warrant. In fact, the "arrest" which Petitioner was contesting on direct appeal occurred on June 11, 2014. Petitioner sought to suppress various items of evidence which, he claimed, were obtained as a result of his being fingerprinted at the police station on June 11, 2014. Doc. 11-22, p. 17. Petitioner claimed that the circumstances surrounding his fingerprinting constituted an arrest and should have been suppressed because Petitioner did not consent and no warrant was ever obtained. Petitioner additionally argued that the fingerprints ultimately led to his formal arrest at a later date and sought to suppress his formal arrest on the basis of the fingerprints being unlawfully obtained.

In contrast, Petitioner's claim in his state habeas action, which is procedurally barred in this action, focused on an arrest warrant issued on June 15, 2004. Doc. 1, p. 16. Petitioner's allegation regarding this arrest asserts that the magistrate judge issuing the warrant was not supplied "with sufficient information to support an independent judgment that probable cause existed for the issuance of the warrant." Doc. 1, p. 24. Petitioner further asserts that trial counsel

9

failed to investigate the basis of the warrant and was ineffective for failing to do so. Petitioner also concedes that he did not raise this issue on direct appeal because "[he] did not realize the issue until after [he] had filed [his] initial writ of habeas corpus which is why I amended the petition." Doc. 1, p. 6.

Since Petitioner did not raise this claim on direct appeal it was defaulted on Petitioner's state habeas action pursuant to Georgia law. *See Turbin v. Mobley*, 269 Ga. at 636. Therefore, the state habeas court's finding that the claim was procedurally defaulted was not an incorrect application of Georgia procedural law. The state procedural default bars federal review of Petitioner's claim.

    ii.    *Cause and Prejudice*

Petitioner's claim may still be reviewed by this Court if Petitioner can show cause for and prejudice from the procedural default. *Henderson v. Campbell*, 353 F.3d 880, 892, (11th Cir. 2003). Cause may be demonstrated by showing that some external, objective factor intervened to prevent efforts to comply with the state's procedural rule. *Ward v. Hall*, 592 F.3d 1144, 1176 (11th Cir. 2010). Prejudice may be demonstrated by showing that "the errors at trial actually and substantially disadvantaged his defense so that he was denied fundamental fairness." *Id*. (citing *McCoy v. Newsome*, 953 F.2d 1252, 1261 (11th Cir. 1992)). Cause and prejudice were addressed by the state habeas court, but a state court's findings concerning cause and prejudice are not entitled to deference. *Crowe v. Head*, 356 F. Supp. 2d 1339, 1350, n. 34 (N.D. Ga. 2005) (citing *Crawford v. Head*, 311 F.3d 1288, 1324-27 (11th Cir. 2002)).

Petitioner argues that his trial attorney's failure to object to the latent fingerprint evidence at trial constitutes cause and prejudice for his procedural default, Doc. 1, p. 27, but Petitioner does not address why this claim was not raised on direct appeal. The real issue for cause and

10

prejudice for Petitioner's procedural default of this particular claim concerns why it was not raised on direct appeal. Petitioner dismissed his appellate attorneys and proceeded *pro se*[3] on appeal. Doc. 10-7, p. 53. Petitioner did not raise this claim on appeal because he "did not realize the issue until after [Petitioner] had filed [his] initial writ of habeas corpus petition which is why [Petitioner] amended the petitioner on August 25, 2014." Doc. 1, p. 6. Because the failure to raise this claim is based on Petitioner's own decisions and conduct, Petitioner has failed to demonstrate cause for his procedural default.

Petitioner alternatively argues in his reply to Respondent's Answer that this claim is not procedurally defaulted because the state habeas court addressed the claim on its merits. As discussed above, the state habeas court dismissed or denied Petitioner's complaint for three reasons. The court found that the claim was procedurally defaulted, procedurally barred, and meritless. The ultimate reasons for which the court denied Petitioner's relief are, therefore, ambiguous. Petitioner is correct that "should a state court reach the merits of a claim notwithstanding a procedural default, the federal habeas court is not precluded from considering the merits of the claim." *Alderman v. Zant*, 22 F.3d 1541, 1549 (11th Cir).

Problems arise where, as here, the state court both determines that a claim is procedurally defaulted and considers the merits of the claim. In such cases it may be unclear if the claim was rejected for an "independent and adequate" state law ground. *Id*. The Eleventh Circuit has addressed this ambiguity, which often encountered in state court decisions, by holding that

---

[3] Correspondence from Petitioner's post-trial attorney, which was entered into evidence, shows that Petitioner's appellate counsel believed that Petitioner's claims regarding the fingerprint report were "a non-issue" and that Petitioner thought "the fingerprint report in the case says something that it doesn't say." Doc. 10-6, p. 79. As a result, Petitioner filed a "Motion to Dismiss Appeal Attorney," and the motion was granted on July 21st, 2010. Doc. 10-7, p. 54-55.

"where a state court has ruled in the alternative[4], addressing both the independent state procedural ground and the merits of the federal claim, the federal court should apply the state procedural bar and decline to reach the merits of the claim." *Id.* (citing *Harris v. Reed*, 489 U.S. 255 (1989); *Richardson v. Thigpen*, 883 F.2d 895, 898 (11th Cir. 1989)); see also *Marek v. Singletary*, 62 F.3d 1295, 1301 (11th Cir. 1995); *Thompson v. Secretary for dept. of Corrections*, 517 F.3d 1279, 1283, n.5 (11th Cir. 2008) ("That the [state] court alternatively rejected Petitioner's claims on the merits does not disturb the procedural bar.").

The state habeas court explicitly determined that "the claims of Petitioner here are procedurally defaulted pursuant to O.C.A.A. 19-4-48(d)" because they were not raised on direct appeal. Doc. 10-25, p. 3. Therefore, they are barred from federal review.

    *iii.    Claim Reached on the Merits*

Petitioner's claims related to trial counsel's failure to suppress the state fingerprint expert's testimony and failure to cross examine that witness concerning prior inconsistent statements were raised on direct appeal and are subject to federal review. As discussed above, federal courts are prevented from granting habeas relief for any claim adjudicated on the merits in a state court unless that decision (1) resulted in a decision contrary to, or involved an unreasonable application of, clearly established federal law as determined by the Supreme Court, or (2) resulted in a decision based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings. According to clearly established federal law, to prevail on a claim of ineffective assistance of counsel, the Petitioner bears the burden of establishing by a preponderance of the evidence that: 1) his attorney's performance was deficient, and 2) he was prejudiced by the inadequate performance. *Strickland,* U.S. at 687; *Chandler v.*

---

[4] It is also common practice for federal courts to hold a claim procedurally defaulted and then also address the claim on the merits. *Horsley v. State of Ala.*, 45 F.3d 1486, 1497 (11th Cir. 1995) (Judge Hatchett dissenting).

12

*United States*, 218 F.3d 1305, 1313 (11th Cir.2000). A petitioner must prove both prongs of the Strickland test to show her counsel was ineffective. *Id.*

Petitioner argues that Counsel's performance was ineffective because trial Counsel failed to cross-examine Mr. Windham, the State's expert, regarding prior inconsistent statements he made concerning whether identifiable latent prints were lifted from the crime scene. The source of the issue comes from Mr. Windham's report. According to the report, Mr. Windham tested four Latent Print Backing Cards containing six total prints related to this case. Doc. 10-17, p. 23 - 25. Of the six prints, two were partial latent fingerprints impressions, and four were partial latent palm print impressions. *Id* at 23. Page two of the report states:

> The single (identifiable) latent fingerprint impression displays sufficient qualities (clarity) and quantities of identifying friction skin minutia within the latent print image, making it suitable for latent print comparison purposes.

The report goes on to say that the single print that could be tested against Petitioner's left thumb print, was so tested, and was a positive match. On page three of his report, Mr. Windham wrote, "No identifiable latent print impressions, suitable for comparison purposes, remain unidentified." *Id.* at 24.

While the jury broke for lunch on the first day of trial, Petitioner brought up the subject of page three of Mr. Windham's report with the Court. After some discussion, Mr. Windham was put on the stand to elucidate the meaning of his report. The court directly asked Mr. Windham to clarify what the phrase on page three of his report meant, and Mr. Windham replied that "none of the latent print impressions that were developed" from the crime scene "had value for comparison purposes." Doc 10-8, p. 143. Mr. Windham then testified that he received six latent prints, only one of which was of sufficient quality to be of value for comparison. He further

testified that the comparable print matched Petitioner's. The court then asked "Why in the world did you put the phrase: No identifiable latent print impressions suitable for comparison purposes remain unidentified." Doc. 10-8, p. 147.  Mr. Windham responded that the phrase indicates that there are no other latent fingerprints "out there to be examined." *Id*. In front of the Jury, Petitioner's trial attorney cross-examined Mr. Windham regarding the suspect phrase. The exchange went as follows:

> Q. And then at the conclusion after Number 1, Number 2, Number 3, you said that – and you put that in bold print – no identifiable latent print impressions suitable for comparison purposes remain unidentified.
>
> A. That is Correct.
>
> Q. Now, did you mean to say by that that there weren't any latent print impressions found?
>
> A. All the prints that could be identified were identified. There were no others left to examine.
>
> Q. But could it be read to give somebody the impression that you examined everything and you couldn't identify anything?
>
> A. That's not the way I interpreted it.
>
> Q. Well, that's not what you wrote though, is it.
>
> A. I wrote no identifiable latent print impressions suitable for comparison purposes remain unidentified.
>
> Q. But you didn't add except for what is on Page 2, did you?
>
> A. No.

Doc. 10-9, p. 89 – 90. Petitioner then interjected and the jury was excused. Petitioner was allowed to develop his own question, which his attorney asked upon the jury's return:

> Q. Captain Windham, on your second comparison that is on Page 3 of your report, did you compare that with the print that you said that you got a match on page 2?
>
> A. Yes, as I testified earlier, the prints that I acquired from the defendant myself was compared against the known impressions submitted to me for comparison. They were found to be the same. A second comparison was conducted against the single identifiable latent print, and the findings were found to be the same.
>
> Q. Did you record [Petitioner's] thumb print multiple times to compare it again with the same print that you compared his thumb print with on Page 2?
>
> A. That is correct, I did, and my findings were the same. They were the same.
>
> Q. What were the results of the comparison according to your own words on Page 3? We're referring to Page 3 of the report. It should be on your screen in front of you.
>
> A. All my findings are the same.

*Id.* at 99 – 100.

Instead of questioning Mr. Windham further on this subject and thereby allowing Mr. Windham to clarify and refine his meaning, as Mr. Windham did during the break, when Petitioner's questions were asked, and at the Motion for New Trial, Doc. 10-21, p. 37 – 40, Counsel focused on multiple other problem aspects of the fingerprint comparison. Counsel developed and argued issues concerning the difficulty of obtaining a fingerprint from a fence; the fact that the print was partially obscured by a crease; the fact that only part of the print was identifiable; the fact that the print was overlaid on other prints; and the fact that Mr. Windham attributed a dark spot on the print to perspiration, but the print was retrieved at least four hours

15

after the victim was killed. Counsel was also able to prevent Mr. Windham from testifying about how long the fingerprint had been at the crime scene before it was lifted by investigating officers. Doc. 10-9, p. 90 – 100. Finally, Counsel had the latent print independently examined by a former FBI examiner, who concluded the print belonged to Petitioner. Doc. 10-20, p. 15.

As the foregoing demonstrates, Petitioner's allegation that the issue of Mr. Windham's report or prior statements were not raised in the appropriate manner does not constitute deficient performance. Petitioner was allowed to formulate his own questions at trial. Further, counsel competently and extensively cross-examined Mr. Windham and was able to develop multiple weaknesses in Mr. Windham's testimony. Counsel subsequently used this testimony to significantly question the veracity of Mr. Windham's testimony during closing arguments. Therefore, the Georgia Supreme Court's finding that Counsel's performance was not outside the range of reasonable professional conduct is not an objectively unreasonable result.

Petitioner is not entitled to relief for his related claim that Counsel was ineffective for failing to file a Motion to Suppress Mr. Windham's testimony. The trial court specifically addressed this issue during a break on the first day of trial. Petitioner was allowed to argue extensively concerning the inconsistencies within Mr. Windham's report, and the Court clearly indicated it understood Petitioner's argument, treating it approvingly at points. Despite this, the Court determined that "this is a subject for cross-examination, and y'all can question along this line in front of the jury and can make whatever argument that y'all want." Doc. 10-8, p. 149. In light the trial court's statement that it found the issue to be one of credibility for the jury and the discussion of Counsel's behavior above, the Georgia Supreme Court's ruling was not objectively unreasonable. Petitioner is not entitled to relief on this claim.

**CONCLUSION**

Petitioner's claims related trial counsel's failure to file a motion to suppress his arrest warrant were not raised on Petitioner's direct appeal and were procedurally defaulted at Petitioner's state habeas action. Therefore the claim is procedurally barred from federal review and it is **RECOMMENDED** that this claim be **DISMISSED**.

Petitioner's ineffective assistance of trial counsel claims related to suppressing and/or cross-examining Mr. Windham on the basis of his report and prior statements was addressed on the merits by the Georgia Supreme Court. That Court identified the correct federal law, made a reasonable determination concerning the facts, and then applied the law to the facts of Petitioner's case. The resulting decision to deny Petitioner's claim was not contrary to clearly established federal law. Therefore, it is **RECOMMENDED** that these claims be **DENIED**.

In addition, and pursuant to the requirements of Section 11(a) of the Rules Governing Section 2255 Proceedings, it does not appear that Petitioner has made a substantial showing of the denial of a constitutional right. 28 U.S.C. § 2253(c)(2); *Slack v. McDaniel*, 529 U.S. 473, 483-84 (2000) (explaining how to satisfy this showing) (citation omitted). Accordingly, it **FURTHER RECOMMENDED** that the Court **DENY** a certificate of appealability in its final order.

Pursuant to 28 U.S.C. 636(b)(1), the parties may serve and file written objections to this **RECOMMENDATION** with the District Judge to whom this case is assigned **WITHIN FOURTEEN (14) DAYS** after being served with a copy thereof.

The parties are further notified that, pursuant to Eleventh Circuit Rule 3-1, "[a] party failing to object to a magistrate judge's findings or recommendations contained in a report and

recommendation in accordance with the provisions of 28 U.S.C. § 636(b)(1) waives the right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions if the party was informed of the time period for objecting and the consequences on appeal for failing to object. In the absence of a proper objection, however, the court may review on appeal for plain error if necessary in the interests of justice.

**SO RECOMMENDED**, this 8th of April, 2016.

s/ Charles H. Weigle<br>
Charles H. Weigle<br>
United States Magistrate Judge